NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

BARBARA E. MARSHALL,

    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil No. 13-05731 (RMB)

**OPINION**

---

**APPEARANCES:**
Philip Wolf
Wolf & Brown, LLC
228 Kings Highway East
Haddonfield, NJ  08033
    Attorney for Plaintiff

Paul J. Fishman
Tomasina DiGrigoli
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY  10278
    Attorneys for Defendant

**BUMB,** UNITED STATES DISTRICT JUDGE:

Plaintiff Barbara E. Marshall (the "Plaintiff") seeks

judicial review pursuant to 42 U.S.C. §§ 405(g) of the final

decision of the Acting Commissioner of Social Security (the

"Commissioner") denying her application for social security

benefits. For the reasons set forth below, the Court will vacate

the decision and remand for further proceedings consistent with this Opinion.

## I.   **Background**

### a. Procedural Background

Plaintiff applied for social security benefits on March 9, 2010, alleging a disability onset date of May 8, 2009 (the "alleged disability onset date"). (Administrative Record "R" 13.) The claim was denied on June 17, 2010, and again on reconsideration on September 1, 2010. (Id.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before the Honorable Daniel N. Shelhamer on November 23, 2011. (Id.) Plaintiff testified at the hearing and was represented by counsel. (Id. at 40.)

On December 15, 2011, the ALJ issued a decision finding that Plaintiff has not been under a disability from the alleged disability onset date, May 8, 2009, through the date of decision and denying Plaintiff's application. (Id. at 32-33.) Plaintiff timely filed an appeal, which was denied on July 25, 2013. (Id. at 1.) At that time, the ALJ's decision became the final decision of the Commissioner.

### b. Factual Background

Plaintiff was 52 years old, which is defined as an individual closely approaching advanced age, 20 C.F.R. § 404.1563, on the alleged disability onset date. (R. 31.) She

resides with her husband, daughter, and two grandchildren. (Id. at 44.) Plaintiff previously worked as a court administrator, but was terminated in May 2009 as a cost-saving measure. (Id. at 157.) Plaintiff graduated from high school and took certificate courses at the Justice Center but failed the state test twice before she became ill. (Id. at 49.) She now receives a disability pension. Plaintiff has been diagnosed with rheumatoid arthritis, steroid dependent Stage II thoracic sarcoidosis, depression, and anxiety. (Id. at 15.) She also has suffered from gastroesophageal reflux disease ("GERD"), migraines, and vision problems. (Id. at 15-18.)

In her Adult Function Report, completed on April 20, 2010, Plaintiff reported that she helps her daughter raise Plaintiff's two grandchildren, and also cares for her pets. (Id. at 164.) She has no problem completing her personal care activities, such as dressing and bathing herself. (Id. at 165.) She also does most of the food preparation, including preparing complete meals, though her son cooks at times. She also completes household chores, such as dusting and vacuuming, though she indicates that these tasks take her longer to complete than prior to her illness. (Id. at 166.) Plaintiff also leaves her home two to three times a week, occasionally shops, and drives a car. (Id. at 167.) She goes to dinner with friends and regularly attends sports events for her grandchildren. She also states

that she can lift things as long as they are not heavy, and can walk and climb stairs slowly. (Id. at 168.) According to her doctor's instructions, Plaintiff exercises a few times a week by walking around the block. (Id. at 171.)

    c. Plaintiff's Testimony

    At the hearing, Plaintiff testified that she has vision problems due to her long-term steroid therapy but she continues to drive locally. (Id. at 44-45.) She testified that she experiences exertional shortness of breath on a daily basis when completing household tasks, such as laundry. (Id. at 49.) She does the laundry but it takes her nearly a full day to carry the loads up the stairs and she must rest after each trip upstairs. (Id.) She also stated that, while she has less difficulty on flat surfaces, she can walk only about a quarter of a block and she could only do this about two-and-a-half times per day. (Id. at 50-51.) As for standing, she can only stand about 10-15 minutes at a time, about 6 times a day. (Id.) She can sit for about 15 minutes at a time before getting "antsy" and "very tired," although she acknowledged that she experiences no pain or discomfort while sitting. (Id. at 51.) She testified she could do this about 6 times a day. (Id. at 54.) Plaintiff also testified that she is frequently fatigued and nauseous. She takes medication for the nausea and also takes ginger ale, which helps. (Id. at 52.) Moreover, Plaintiff testified that the

heaviest thing she is able to lift is a gallon of milk and that her husband helps her to lift the heavier things. (Id. at 57.)

As to her daily activities, Plaintiff testified that she has a big house that she cleans. (Id. at 54.) She can only vacuum one room at a time because of her fatigue and shortness of breath, but she vacuums approximately twice a week. (Id. at 53.) She also dusts, which does not cause her any difficulties, though her three children sometimes help her with vacuuming or cleaning the bathrooms. (Id. at 54, 57.) Plaintiff testified that she tries to garden, but is only able to spend 15 minutes at a time outside. She further testified that she does not go outside that much anymore because she is afraid of being around sick people. (Id.)

Plaintiff testified that she takes medication for her anxiety issues, which helps. She does not receive any other treatment for her anxiety. (Id. at 56.)

In addition, she used to have migraines but lately she only experiences "regular headaches" a few times a week. (Id. at 57.) However, once she takes aspirin, the headaches go away. (Id.)

She also has arthritis "all over," which causes weakness in her hands and for which she takes Arthrotech. (Id. at 58.)

d. The ALJ's Decision

Applying the requisite five-step analysis, the ALJ concluded that Plaintiff met the insured status requirements of

sections 216(i) and 223[1] of the Social Security Act through December 31, 2014 (the "date last insured"), and that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date, May 8, 2009. (R. 15.) The ALJ also found that Plaintiff had severe impairments consisting of rheumatoid arthritis, steroid dependent Stage II thoracic sarcoidosis, depression, and anxiety. (Id.) The ALJ also addressed Plaintiff's complaints of GERD, cor pulmonale, migraines, and an eye impairment, but found that "the record does not support a conclusion that they caused significant vocationally relevant limitations." (Id.)

The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Id. at 18.) Furthermore, based on his findings, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work but should have no more than occasional interaction with co-workers and the general public. (Id. at 23.) In making these findings,

---

[1] Sections 216(i) and 223(d), of the Social Security Act define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

the ALJ thoroughly addressed the extensive medical record,

including

- records and function reports of Plaintiff's treating
  physician, Dr. Carl Vitola (Exs. 5F, 17F, 18F, 23F,
  25F);

- treatment records of Plaintiff's treating pulmonary
  specialist, Dr. James Giudice (Exs. 4F, 24F);

- Plaintiff's hospital records (Exs. 3F, 15F, 20F-22F);

- treatment records of examining physician, Dr. John
  Chiesa regarding Plaintiff's gastrointestinal issues
  (Ex. 15F, 25F, 24F);

- treatment records of examining physician, Dr. Ralph
  Lanciano, Jr. regarding Plaintiff's vision
  difficulties (Exs. 6F, 16F);

- report of psychiatric consultative physician, Dr.
  David Bogacki (Ex. 8F);

- treatment records of examining physician, Dr. James
  Mamary (Ex. 16F);

- opinions of state consultative physicians and
  psychologists (Exs. 7F, 13F, 9F, 10F, 12F);  and

- various x-rays, CT scans, and pulmonary function tests
  (see, e.g., Exs. 2F, 4F).

Moreover, the ALJ stated that Plaintiff's subjective complaints

regarding the intensity, persistence, and limiting effects of

her alleged symptoms were not credible to the extent they were

inconsistent with the assessed RFC. Specifically, the ALJ found

that Plaintiff's reports of pain and associated exertional

limitations were not consistent with the longitudinal medical

record as well as her own prior statements in her Function Report. (Id. at 28, 29.)

After performing the RFC assessment, the ALJ determined that Plaintiff was unable to return to her past relevant work as a court administrator, which is skilled and light, because it exceeds her RFC. (Id. at 31.) Furthermore, the ALJ concluded that Plaintiff was an individual closely approaching advanced age as of the alleged disability onset date, had at least a high school education and was able to communicate in English. He further determined that Plaintiff had acquired telephone skills from her past relevant work as a court administrator. (Id. at 31-32.) Then, considering Plaintiff's age (52 years old as of the alleged disability onset date (id. at 31)), education, work experience, and RFC as determined, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Id. at 28-29.) In particular, the ALJ relied upon the testimony of vocational expert, William Slaven, who testified that Plaintiff could perform certain jobs, including contact clerk (DOT 209.387.018), which would require no in-person contact with the general public. ((Id. at 32.) Using the medical-vocational rules as a framework, the ALJ found that Plaintiff was not disabled under Rule 201.15. Thus, Plaintiff's application was denied.

**II.   <u>Standard of Review</u>**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r, 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence
> and has sufficiently explained the weight he has given
> to obviously probative exhibits, to say that his
> decision is supported by evidence approaches an
> abdication of the court's duty to scrutinize the

record as a whole to determine whether the conclusions
reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting

Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th

Cir. 1977)) (internal quotations omitted); see also Guerrero v.

Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19,

2006) ("The ALJ's responsibility is to analyze all the evidence

and to provide adequate explanations when disregarding portions

of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent

medical and non-medical evidence and "explain [any]

conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112,

122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although

we do not expect the [administrative law judge] to make

reference to every relevant treatment note in a case where the

claimant . . . has voluminous medical records, we do expect the

ALJ, as the factfinder, to consider and evaluate the medical

evidence in the record consistent with his responsibilities

under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the

reviewing court must also determine whether the ALJ applied the

correct legal standards. See Friedberg v. Schweiker, 721 F.2d

445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d

Cir. 2000). The court's review of legal issues is plenary.

Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d

429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the

inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not

less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act

further states,

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential

analysis for evaluating a claimant's disability, as outlined in

20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428,

the Third Circuit described the Commissioner's inquiry at each

step of this analysis:

11

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

III. **Analysis**

Plaintiff contends that the ALJ erred in (1) failing to specifically identify Plaintiff's transferrable work skills and to obtain appropriate testimony from the vocational expert regarding Plaintiff's transferrable work skills; (2) failing to present an accurate and complete hypothetical vocational profile to the vocational expert; (3) failing to accord controlling or great weight to the opinions of Dr. Vitola, Plaintiff's treating physician; and (4) failing to give appropriate weight to the conclusion of State Agency psychological consultant, Dr. Joseph Bencivenne, that Plaintiff was moderately limited in her ability to complete a workday and workweek without interruptions due to her psychological symptoms, which would have limited Plaintiff to unskilled work. Because the Court agrees that the ALJ's conclusion regarding Plaintiff's transferable work skills is not supported by the evidence of record and, relatedly, that the hypothetical posed to the vocational expert was incomplete, the Court will remand for further proceedings.

> a. The ALJ Erred in Determining that Plaintiff Had Transferable Skills

Plaintiff first argues that the ALJ failed to specifically identify Plaintiff's transferable work skills or to obtain testimony from the vocational expert as to Plaintiff's transferable work skills, thus necessitating remand. Because

13

Plaintiff has non-exertional limitations in her assessed RFC, the ALJ may only use the medical-vocational guidelines as a framework for his decision. See SSR 83-12, 83-14. Using those guidelines as a framework, which the ALJ properly did here, whether Plaintiff had transferable work skills was material to the determination of whether Plaintiff was disabled because the ALJ concluded that Plaintiff was unable to return to her past relevant work, which was skilled with specific vocational preparation (SVP) code of 8.[2] Compare Part 404, Subpart P, App. 2, Rule 201.14 (directing conclusion of "disabled" where skills are not transferable), with id. at Rule 201.15 (directing conclusion of "not disabled" where skills are transferable); see also SSR 82-41. SSR 82-41 defines a skill as

> knowledge of a work activity which requires the
> exercise of significant judgment that goes beyond the
> carrying out of simple job duties and is acquired
> through performance of an occupation which is above
> the unskilled level (requires more than 30 days to
> learn). It is practical and familiar knowledge of the
> principles and processes of an art, science or trade,
> combined with the ability to apply them in practice in
> a proper and approved manner. This includes activities
> like making precise measurements, reading blueprints,
> and setting up and operating complex machinery. A

---

[2] "To perform a job that is classified as SVP 3 and above, the individual must have the necessary skills to do so. An administrative law judge cannot assume that a person whose past relevant work was skilled can perform any other skilled or semiskilled work having a lower SVP level." Oldenburgh v. Astrue, No. 08-1671, 2009 WL 812010, at *4-5 (M.D. Pa. March 26, 2009) (citing Podedworny, 745 F.2d at 219-221).

> skill gives a person a special advantage over
> unskilled workers in the labor market.

Under the Regulations, skills are transferable "when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). The transferability determination "depends largely on the similarity of occupationally significant work activities among different jobs." Id. As Plaintiff points out, SSR 82-41 also requires the ALJ to make certain findings of fact when transferability of job skills is an issue, including identifying the acquired work skills and the specific occupations to which the acquired work skills are transferable. SSR 82-41; see also Oldenburgh, 2009 WL 812010, at *4-5. The ALJ must also ensure his determination is appropriately supported with citations to the record. SSR 82-41.

In the instant matter, the ALJ identified Plaintiff's past relevant work as court administrator, which was skilled work with an SVP code of 8. (R. 32.) The ALJ then concluded that the court administrator job allowed Plaintiff to acquire telephone skills. (Id.) Contrary to Plaintiff's argument, the ALJ did explain how Plaintiff's telephone skills would transfer to one of the jobs identified by the vocational expert as jobs that

Plaintiff could perform.[3] Specifically, the ALJ referred to the vocational expert, who testified that the contact clerk job required constant contact with the general public via the telephone. (Id. at 32, 60.)

However, the Court finds that the ALJ's determination is not supported by substantial evidence in the current record. During the hearing, the ALJ noted that he had "some knowledge of court administrators" but proceeded to ask Plaintiff to describe her past work as she performed it. (Id. at 47.) Plaintiff stated that she worked as a court administrator for approximately 15 years and during that time she was in charge of her department:

> I was in charge of all the tickets coming in, all the criminal cases; making sure that all the clients that wanted attorneys, made sure all the responses were, were current and properly put into the computer; set them up court; making sure the people at the window paying their tickets, which was my deputy – she, she did that, but if she had any questions, helping her out; pulling files when we needed to; setting up court; my job, budgeting, doing the finances, you know . . . .

Plaintiff also testified that she worked primarily in the office. (Id. at 48.) At no point in her testimony did Plaintiff identify any work activities that occurred via the telephone.

---

[3] The vocational expert testified that a person with Plaintiff's acquired skills could perform the following jobs: personnel administrator, DOT 166.167-018; administrative assistant, DOT 169.167-010; appointment clerk, 237.367-010; and contact clerk, DOT 209.387-018. (R. 59-60.)

Nor did the vocational expert testify that a court administrator position ordinarily necessitates extensive use of a telephone in a manner consistent with that required by the contact clerk position. Moreover, the DOT job description of a court administrator contains no mention of any telephone skills or activities conducted over the telephone. Although in this day and age, the Court certainly believes that Plaintiff's position required frequent use of the telephone, without a shred of evidence in the record regarding Plaintiff's phone usage, the Court is constrained to find that the ALJ's conclusion is not supported by substantial evidence.

On remand, however, the ALJ may certainly inquire of Plaintiff's telephone experience and may in fact reach the same conclusion regarding the transferability of Plaintiff's work skills. Indeed, a comparison of the job description for a court administrator and a contact clerk, which the ALJ determined was a position Plaintiff could perform, reflects significant similarities in job tasks, suggesting that the ALJ could find several transferable skills. For example, both positions require general data compilation and analysis,[4] as well as review to

_____

[4] Compare Court Administrator, DOT 188.117-130 ("Investigates problems that affect case flow and recommends or implements corrective measures. Compiles and analyzes data on court activity to monitor management performance and prepare activity reports."), with Contact Clerk, DOT 209.387-018 ("Sorts

17

ensure compliance with procedures.[5] Plaintiff's testimony regarding her daily tasks as a court administrator also suggests that she developed customer service skills that would likely translate into the position of contact clerk, which the vocational expert testified requires telephone communications with the general public.[6] (R. 60.) But, such findings must be made by the ALJ with appropriate citation to supporting materials and/or testimony.

      b. The ALJ Erred in Posing a Hypothetical Vocational Profile to the Vocational Expert

---

and lists gas- and electric-power service-connection orders for distribution to various service centers and compiles data from completed orders for reports: Sorts orders into groups for delivery to service centers, locating address of customer on zoned map to determine appropriate center.").

[5] Compare Contact Clerk, DOT 209.387-018 ("Reviews completed orders for compliance with reporting procedures and compiles data for various reports. Reviews incompleted orders and forwards them for processing."), with R. 47 ("I was in charge of all the tickets coming in, all the criminal cases; making sure that all the clients that wanted attorneys, made sure all the responses were, were current and properly put into the computer . . . .").

[6] In addition, any general clerical skills that Plaintiff acquired while a court administrator would probably transfer to a new position. See SSR 82-41 ("On the other hand, a semiskilled general office clerk (administrative clerk), doing light work, ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc. These clerical skills may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk.").

Plaintiff next argues that the ALJ failed to pose an appropriate hypothetical based upon Plaintiff's RFC to the vocational expert for consideration and, thus, the determination that Plaintiff could perform other jobs that exist in significant numbers in the national economy is not supported by substantial evidence. After inquiring as to whether the vocational expert had reviewed the "relevant portions of the file," the ALJ requested that the expert provide Plaintiff's vocational profile. The vocational expert identified Plaintiff's prior relevant work as a court administrator, DOT 188.117-130 with an SVP code of 8, performed according to both Plaintiff and the DOT description at the light exertional level. (R. 59.) The ALJ then queried whether, in the absence of any functional limitation,[7] Plaintiff had "any acquired skills that transfer into sedentary jobs?" (Id.) The vocational expert replied in the affirmative and proceeded to identify four skilled or semi-skilled, sedentary positions that Plaintiff could perform. (Id.) However, at no point did the ALJ inform the vocational expert what the Plaintiff's transferable skills were; nor did the vocational expert disclose the nature of Plaintiff's transferable skills on which he relied in reaching his opinion.

---

[7] The transcript actually records this phrase as "[a]nd the abstract of any limitation, functional limitation . . . ." (R. 59.) However, this appears to be a transcription error.

The ALJ then inquired whether the four jobs identified by the vocational expert required contact with coworkers or the general public. (Id. at 60.) The vocational expert explained that the contact clerk position requires constant contact with the public but only over the phone. (Id.)

"When an ALJ poses a hypothetical to a VE, that hypothetical must include all of the plaintiff's impairments that are supported by the record. If the hypothetical does not include all of the plaintiff's impairments, then it is deficient." Davis v. Comm'r of Soc. Sec., No. 11-3036, 2012 WL 2594354, at *11 (D.N.J. July 5, 2012) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). However, the hypothetical need only "fairly set forth every credible limitation established by the physical evidence." Plummer, 186 F.3d at 431; see also Rutherford v. Barnhart, 399 F.3d 546, 553-54 (3d Cir. 2005) ("Fairly understood, such references to all impairments encompass only those that are medically established (see, for example, Reg. § 929(b)). And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations . . . ." (citing Plummer, 186 F.3d at 431)).

Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work but should have no more than occasional interaction with co-workers and the general public to address

her concerns with contracting infections from others. (R. 20.)
Based upon this RFC, it is clear that the ALJ asked the
vocational expert about the relevant limitation – i.e., limiting
in-person interactions with others. Moreover, the vocational
expert was present during Plaintiff's testimony regarding her
age, education, and past relevant work. (Id. at 44, 47-49, 58.)
What causes this Court concern, however, is the fact that the
vocational expert's testimony regarding the availability of jobs
appears to depend upon the transferability of Plaintiff's
acquired skills. Yet, neither the ALJ nor the vocational expert
identified any such skills on the record. While the ALJ later
identified what he viewed as Plaintiff's transferable skills
(i.e., telephone skills), he did not present this information to
the vocational expert prior to the vocational expert proffering
his opinion. Thus, as above, the Court has no other choice but
to remand this matter so that the ALJ may present the vocational
expert with a complete and accurate hypothetical upon which the
expert may rely in rendering an opinion about the other jobs in
the national economy that Plaintiff may perform. Again, the same
conclusion may in fact be reached on remand, but it must be
based on a proper foundation.

**IV.  <u>Analysis</u>**

     For the reasons set forth above, the Court is constrained
to remand this matter to the ALJ for further consideration

21

consistent with this Opinion. Moreover, because remand is

necessitated on these two grounds, the Court need not reach

Plaintiff's remaining arguments.

                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              United States District Judge


Dated: February 24, 2015